**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| v. | : | |
| | | Dkt. No. 2:08-CR-711-001 |
| ANDREW MOGILYANSKY, | : | |
| Defendant. | : | |

MEMORANDUM IN SUPPORT OF DEFENDANT'S OPPOSITION
TO THE PROBATION OFFICE'S REQUESTED MODIFICATION
OF DEFENDANT'S SPECIAL CONDITIONS OF SUPERVISED RELEASE

On September 15, 2017, the Probation Office petitioned this Court to modify the special conditions of defendant Andrew Mogilyansky's supervised release so as to require him to "participate in a sex offender program for evaluation and treatment," Doc. 55, p. 2, and to submit to psychological and physiological testing, including polygraph testing to "to monitor compliance with supervised release and treatment conditions." *Id.* Two psychologists who recently evaluated Mr. Mogilyansky have both concluded that he needs no further evaluation or treatment.

One of those psychologists is Alishia Kalos, Psy.D., of the Joseph J. Peters Institute.[1] Since this is where the Probation Office would likely refer Mr. Mogilyansky should the Court grant the relief requested,[2] its petition has become moot.

---

[1] Dr. Kalos' evaluation is being submitted under seal.

[2] This is where the Probation Office referred Mr. Mogilyansky for evaluation and treatment after he completed his term of imprisonment

The other psychologist is Steven Samuel, Ph.D., associate professor in the Department of Psychiatry and Human Behavior at Thomas Jefferson University Hospital.[3]

According to Dr. Samuel, Mr. Mogilyansky's recent viewing of adult pornography is "a mitigating factor which at once reduces the possibility of his involvement in sexual offending and represents a factor which contributes to his present day low level of risk for such involvement in the future." Samuel Report 3. Polygraph and Voice Stress Analysis (VSA) testing show both that Mr. Mogil-yansky has engaged in no risky sexual conduct since his release from prison in December 2015, and that he has been honest with his psychologist. In short, Mr. Mogilyansky is in need of no further evaluation or treatment. The Probation Office's petition should be denied.

The reason the Probation Office believes Mr. Mogilyansky should be required to participate in a sex offender program for evaluation and treatment is that Mr. Mogilyansky viewed legal adult pornography on a monitored computer several times a month between the spring of 2017 and August 2017. *Id.* Although the Probation Office concedes that "viewing adult pornography is not a violation of

---

[3] Dr. Samuel is also a former Guggenheim Scholar at Harvard University, a former member of Pennsylvania's Sexual Offenders Assessment Board, and a consulting psychologist with the Joseph J. Peters Institute. His CV is being submitted with this memorandum. Dr. Samuel's reports is being submitted separately under seal.

the defendant's supervised release," *id.,* it speculates that such viewing "may be considered risky sexual behavior," and therefore "[i]n an abundance of caution," now asks the Court to require him to be evaluated "to determine[] if the above activity constitutes risky sexual behavior that may necessitate the defendant re-entering treatment." *Id.*   The Probation Office's fears are not well founded.  Not only was Mr. Mogilyansky's viewing of legal adult pornography not "risky sexual behavior" for him, it reduced even his already low risk of reoffending.  For these reasons, "after considering the factors set forth in [18 U.S.C.] section 3553(a)(1), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)," 18 U.S.C. § 3583(e), this Court should deny the Probation Office's petition.

<u>Procedural and Factual History</u>

On April 30, 2009, Andrew Mogilyansky pled guilty pursuant to a written plea agreement to a four-count indictment that charged him with engaging in sexual activity with three minor females in Russia in December 2003, in violation of 18 U.S.C. §§ 2423(b) and (c).  At the September 16, 2009, sentencing, psychologist Steven Samuel, Ph.D., testified that Mr. Mogilyansky: (1) does not suffer from any "psychological disorder or a mental abnormality," including pedo-philia or paraphilia, Sent. Test. of Dr. Samuel, pp. 9-10.  Doc. 46, (2) is not a sexual predator. *id.* 11, and (3) is at a "low" risk of reoffending.  *Id.*  Judge

-3-

McLaughlin "was impressed with Dr. Samuel," Sent. Tr. 82 (Doc. 51), and "accept[ed]," *id.,* his testimony.

Prior to imposing sentence, the Court noted that she previously had "[n]ever … had to sentence someone whose life apart from his crimes seem so very different from the crimes themselves." *Id.* The Court went on to praise Mr. Mogilyansky for the work he had done to help the children injured in the 2004 terror attack in Beslan, Russia, *id.,*[4] and for his efforts to "minimize the injury to the … three victims." *Id.* 83.[5] After referencing the many letters the Court received and the witnesses who testified,[6] the Court found that Mr. Mogilyansky's offense was "very much out of character." *Id.* Finally, Judge McLaughlin found Mr. Mogilyansky to be remorseful for his actions. *Id.* The Court nevertheless imposed a 97-month sentence (the top of the agreed-to sentencing range) to reflect the seriousness of the offense and to deter others. *Id.* 84. Although the prosecutor noted "in these types of cases [the government] consistently requests lifetime supervised release," *id.* 85, Judge McLaughlin imposed a 15-year term. *Id.* 86.

After the Court noted that "the Probation Department ha[d] given [her] several options," id. 87, Judge McLaughlin asked the prosecutor whether she was

---

[4] *See also* PSR ¶ 70 (noting Mr. Mogilyansky's charitable efforts in support of terror victims).

[5] *See* PSR ¶ 86.

[6] The court received 89 letters of support. *See* Sent. Tr. 65.

requesting any conditions of supervised release "in addition to the standard ones." *Id.* The prosecutor made only one request—that "the defendant … have no unsupervised contact with minors, other than his own children." *Id.* Ultimately, the Court imposed two special conditions of supervised release:

> The defendant shall be evaluated for a mental health program by the U.S. Probation Office.

> The defendant shall follow the directions of the U.S. Probation office regarding any contact with minors other than his own children. The defendant shall not obtain employment or perform volunteer work which includes, as part of its job/work description, contact with minor children.

Judgment, p. 4.  Doc 45.  It is notable that the prosecution did not request, and the Court did not impose, the special conditions of supervised release recommended by the Sentencing Commission in sex offense cases.  USSG § 5D1.3(d)(7) (11/1/2008 ed.).[7]

In January 2016, Fred Crawford, Mr. Mogilyansky's Probation Officer, proposed a modification of the special conditions of his supervised release that would require a monitoring devise to be placed on all of Mr. Mogilyansky's computers.  After discussing the proposed modification with Mr. Crawford, Mr. Mogilyansky agreed to it.  He did so, in part, because he understood that his

---

[7] Those recommended special conditions include a requirement that the defendant participate a program for the treatment and monitoring of sex offenders, a condition limiting the defendant's use of computers, and a condition subjecting the defendant to being searched at any time, without a warrant. *Id.*

"online/computer/network activities [would] not be scrutinized beyond determination of criminal activity primarily of the type related to the subject matter of [his] original conviction," Memo., p. 2 ¶ 4,[8] and because he would "not get into trouble as long as [he did] not use the devices for criminal activity." *Id.,* p. 1, ¶ 2.

From around spring until early August of this year, Mr. Mogilyansky viewed legal adult pornography several times a month.  When the computer monitoring software installed on Mr. Mogilyansky's computers brought this legal activity to the attention of Mr. Mogilyansky's Probation Officer (despite prior assurances), he approached Mr. Mogilyansky with a proposed modification that would require Mr. Mogilyansky to submit to a new evaluation and possible treatment.  Mr. Mogilyansky did not consent to this modification because he does not believe his needs further evaluation or treatment.

While the Probation Office is no doubt concerned that Mr. Mogilyansky's viewing of adult pornography could be a red flag, psychologists who recently evaluated Mr. Mogilyansky see no need for further evaluation or treatment.  Moreover, Mr. Mogilyansky has already completed a seven-month-long sex offender

---

[8] Mr. Mogilyansky communicated his understanding to Mr. Crawford in a memorandum dated January 21, 2016.  A copy of this memorandum is being submitted as an exhibit. Mr. Crawford never communicated to Mr. Mogilyansky any disagreement with that summary.

treatment program with the Joseph J. Peters Institute, from which he was successfully discharged.  At the completion of that program, he was given a "Post-Discharge General Safety Plan" to help him avoid any future criminal conduct. [9] The purpose of the plan was to identify risk factors and to recommend what Mr. Mogilyansky should do should he ever be confronted with any of them.  While the plan cautioned him against visiting strip clubs, using illegal substances, or contacting escort services, it did not restrict him from viewing adult pornography.

Mr. Mogilyansky's Joseph J. Peters Institute Discharge Summary reported that:

> Mr. Mogilyansky made excellent use of treatment and was a consistent client who took treatment seriously.  He took full responsibility for his offense behavior, developed relapse prevention skills, and demonstrated genuine remorse and victim empathy.

Discharge Summary, p. 3.  Since then, Mr. Mogilyansky has assiduously followed the relapse prevention strategies he learned at the Joseph J. Peters Institute—none of which cautions him against viewing legal adult pornography.  There is no reason to require Mr. Mogilyansky to be further evaluated or treated.

---

[9] A copy of Mr. Mogilyansky's Joseph J. Peters Institute Discharge Summary Report is being filed under seal.  The Post-Discharge General Safety Plan is being filed with this memorandum as an exhibit.

<u>New Psychological Evaluations Show No Further Evaluation or Treatment Needed</u>

To assure himself that he in fact needs no further treatment, Mr. Mogilyansky asked two psychologists to evaluate him.  Both concluded that Mr. Mogilyansky is in need of no further evaluation or treatment.

On August 29, 2017, Mr. Mogilyansky was evaluated by Alishia Kalos, Psy.D., a psychologist at the Joseph J. Peters Institute—the same institute to which the Probation Office had previously referred Mr. Mogilyansky for evaluation and treatment.  Dr. Kalos does not believe Mr. Mogilyansky needs any "sexual offense specific mental health services at present."  Report, p. 12, Recommendation 1. Unless there is evidence that Mr. Mogilyansky has engaged in troubling sexual behavior beyond that flagged in the petition now before this Court, Dr. Kalos also does not believe that any further evaluation is warranted.  *Id.,* Recommendation 2. Finally, Dr. Kalos found Mr. Mogilyansky's risk of reoffending to be "low."  *Id.* 11.  Since the Probation Office would likely refer Mr. Mogilyansky to the Joseph J. Peters Institute for further evaluation should this Court grant the requested modification, this recent evaluation makes any further evaluation unnecessary.

Before preparing his evaluation report, Dr. Samuel interviewed Mr. Mogilyansky for approximately 30 hours, Samuel Report, p.8, his wife for approximately an hour, and six other people who know Mr. Mogilyansky well for between

15 and 30 minutes each.  *Id.*[10]  Dr. Samuel relied on the psychological test results Dr. Kalos administered and administered several additional ones.  *Id.* 8-9.  Like Dr. Kalos, Dr. Samuel believes that "Mr. Mogilyansky does not require additional participation in sex offender specific treatment."  Samuel Report 2.  He also agrees that Mr. Mogilyansky "is at a low level of risk for sex offense recidivism."  *Id.*  Dr. Samuel offers the following reasons to support these conclusions:

> Mr. Mogilyansky participated in sex offender specific treatment at the Joseph J. Peters Institute from February 11, 2016 to August 25, 2016. He was discharged from treatment at Dr. Michael Skoraszewski's recommendation, who stated that Mr. Mogilyansky "demonstrated genuine remorse for his actions," that he "developed an awareness about relapse prevention," and that Mr. Mogilyansky did not require a referral for "additional sex offense specific treatment" nor any "immediate referrals."

> Mr. Mogilyansky, through participation in sex offender specific treatment, developed an awareness that there are circumstances that made him vulnerable for involvement in the behavior which resulted in his 2009 conviction and manifesting such behavior in the future. These circumstances included tension between and within himself and his wife, as a newly married couple, during the period of time that he engaged in unlawful conduct. These circumstances are no longer evident and the tension between them is currently at a low level.

> Following his release from custody, Mr. Mogilyansky has developed a network of personal and family friends through his new business (a litigation support company he formed after he was released from custody) and through his wife's existing real estate business. He also has a network of personal and family friends, apart from those related to his consulting business, with whom he and his family have regular contact. Mr. Mogilyansky's clients and friends are all aware of his

---

[10] Dr. Samuel chose six individuals from a list of 36 people provided by Mr. Mogilyansky.  *Id.*

legal circumstances. The isolation and lack of support, evident in his life prior to his arrest, has been replaced by a safety plan which was enacted during his sex offender specific treatment between February 11, 2016 and August 25, 2016.

Mr. Mogilyansky was frequently separated from his wife for extended periods of time during overseas trips prior to his arrest. My separate interviews with Ms. Mogilyansky and Mr. Mogilyansky identified that the tension between and within themselves is presently at a low level and within the range expected of "average" families who live busy lives while raising three (3) children.

Samuel Report 10.  Dr. Samuel's conclusions concerning Mr. Mogilyansky's relationship with his wife are supported by the letter Mrs. Mogilyansky has written the Court.[11]  In that letter, Mrs. Mogilyansky states:

Our family and marriage are as strong and close as ever. Andrew and I are in a happy, loving and harmonious relationship as husband and wife. Our beautiful children, who now have their father back at home, are thriving personally and academically.

Letter 1.  These strong family bonds are the result of the thoughtful way the Mogilyanskys approached Mr. Mogilyansky's time in prison:

Andrew and I took a thoughtful approach to ensure our family would not be weakened while he was in prison. We sought advice from Dr. Samuel and others and did our own research into how to cope with these circumstances. What came out was our commitment to each other to preserve the "informational and emotional unity" of our family throughout Andrew's sentence. This included speaking on the phone every day, writing daily letters, and of course taking every opportunity to see each other on prison visiting days.

---

[11] Mrs. Mogilyansky's letter is being filed under seal.

*Id.* The fact that Mr. Mogilyansky completed the Joseph J. Peters Institute sex offender treatment course with "flying colors," *id.* 2, only confirmed what Mrs. Mogilyansky had "known to be true all along—that Andrew has no psychological or sexual disorders, and would never cheat on me again." *Id.*

Dr. Samuel sees Mr. Mogilyansky's viewing of legal adult pornography as "a factor which mitigates, i.e., lowers his level of risk for future unlawful sexual conduct." Samuel Report 2.[12] Dr. Samuel offers three reasons to support this conclusion. The first is discussed in a supplementary memorandum in opposition being filed under seal. The second is that Mr. Mogilyansky viewed the adult pornography on a monitored computer—i.e., he was not deceptive. *Id.* 11. The third is that his viewing of legal adult pornography "differed significantly from his involvement in the contact offenses with underage females which was the basis of his conviction in 2009." *Id.*[13]

Dr. Kalos' and Dr. Samuel's conclusions are dependent on Mr. Mogilyansky's having been honest. To demonstrate his commitment to honesty and

---

[12] Dr. Kalos' evaluation diverges from Dr. Samuel's on this point. While she does not believe that Mr. Mogilyansky needs further evaluation or treatment, she believes his "use of internet pornography likely puts [him] at increased risk for sexual re-offense." Kalos Report 11. Dr. Kalos based this finding on the fact that "official records indicate that Mr. Mogilyansky previously used the internet to exploit vulnerable minors for personal financial and sexual gain during the course of the Instant Sexual Offense." *Id.*

[13] Dr. Kalos agrees with this assessment. See Kalos report, p. 11 ("Mr. Mogilyansky's recent use of internet pornography does not appear to support themes directly related to his history of sexual offense behavior").

transparency, Mr. Mogilyansky told both Dr. Kalos and Dr. Samuel that he was willing to submit to a polygraph examination. Kalos Report 2-3, Samuel Report 11. Before submitting to a polygraph examination, Mr. Mogilyansky had Dr. Samuel put together a list of questions for the polygraph examiner to ask him.  Those questions are:  (1) "Did you ever try to mislead Dr. Samuel?" (2) Since December 2015 have you had sexual contact with anyone other than your wife?" (3) Since December 2015 have you browsed any child pornography, SM or bestiality web sites?" (4) Since December 2015 have you engaged in a sex chart or sex webcam session?" and (5) "Since December 2015 have you had any unmonitored contact with children other than your own?"  These are the questions the polygraph examiner asked Mr. Mogilyansky on November 9, 2017.  The VSA examiner asked Mr. Mogilyansky a similar set of questions.  Both the polygraph and VSA examiner reported that Mr. Mogilyansky was not being deceptive when he answered "no" to each of these questions.  A copy of the polygraph and VSA examiner's report is being submitted as an exhibit.

Conclusion

Because two prominent psychologists who recently evaluated Andrew Mogilyansky have both concluded that further evaluation or treatment is unnecessary, there is no reason to modify the special conditions of supervised release as requested by the Probation Office.  The petition should therefore be denied.

Respectfully submitted,

Date: November 29, 2017

/s/*James H. Feldman, Jr.*
JAMES H. FELDMAN, JR/.
PA Bar No. 36345
50 Rittenhouse Place
Ardmore, PA  19003
  610-649-8200
  610-649-8362 (fax)
  jfeldman@jameshfeldman.com

GEORGE BOCHETTO
Bochetto & Lentz
1524 Locust Street,
Philadelphia, PA 19102
  215-735-3900
  215-735-2455 (fax)
  gbochetto@bochettoandlentz.com

## CERTIFICATE OF SERVICE

I hereby certify that this document and attachments filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

s/James H. Feldman, Jr.
JAMES H. FELDMAN, JR.