**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **vs.** | : | **CASE NO. CR-08-00711** |
| | : | |
| **ANDREW MOGILYANSKY** | : | |

**REPLY MEMORANDUM OF ANDREW MOGILYANSKY**
**TO THE GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION**
**FOR EARLY TERMINATION OF SUPERVISED RELEASE**

Defendant Andrew Mogilyansky, by and through his undersigned counsel, respectfully submits this Reply Memorandum (this "Reply") to the Government's Opposition (the "Opposition") to the Motion for Early Termination of Supervised Release (the "Motion"), and in support thereof, states as follows:

For the Court's convenience and pleading efficiency, the principal arguments made by the Government in its Opposition and by Defendant in this Reply are summarized in bullet-point format in Parts I, II and II below. A more thorough argument regarding *Damon* follows in Part IV at the end.

**REPLY TO THE GOVERNMENT'S KEY ARGUMENTS**

I.     **Legal Bar Under U.S. v. Damon**:

**Summary of the Government's Argument**: The Motion is barred under *United States v. Damon*, 933 F.3d 269 (3d Cir. 2019) since Mr. Mogilyansky agreed not to appeal or collaterally attack his sentence as part of his plea agreement.

**Defendant's Response**: *Damon* does not control because:

A. Damon had a much broader catch-all waiver. The plea agreement in *Damon* was distinguished from most plea agreements, including Mr. Mogilyansky's, since it also prohibited "any other writs or motions" in addition to the customary promise by a defendant not to "appeal or collaterally attack" the sentence. Subsequent to *Damon*, five courts in this District have recognized that absent the "any other writs and motions" catch-all language, relief under § 3583(e)(1) is not waived by a defendant[1]. As the Government points out, three other District Court judges did interpret the *Damon* precedent as an absolute bar[2]. In sum, there are five (5) District Court defendant-friendly decisions interpreting Damon to not be an absolute bar, and three (3) District Court decisions taking the contrary, Government-friendly interpretation. In its Opposition, the Government identifies no pending appeal or controlling appellate decision resolving that District Court division in favor of the Government's position; and the undersigned counsel has found none either. As the plea agreement here only prohibits appeals and collateral attacks, and a majority of District Courts in the Third Circuit have interpreted Damon to not preclude § 3583(e)(1) relief absent

---

[1] See *United States v. Crews*, No. CR 10-663-5, 2020 WL 6581430, at *2 (E.D. Pa. Nov. 10, 2020); *United States v. Mabry*, 528 F. Supp. 3d 349 (E.D. Pa. 2021); *United States v. Pearson*, 2024 WL 1936226, at *2 (E.D. Pa. May 1, 2024); *United States v. Tarboro*, 2023 WL 3821812, at *2 (E.D. Pa. June 5, 2023); *United States v. Baez*, 2024 WL 1743752, at *2 (E.D. Pa. Apr. 23, 2024).

[2] See *United States v. Clark*, 2021 WL 3737195 (E.D. Pa. Aug. 24, 2021); *United States v. Thompson*, No. 09-00797-1, ECF No. 46 (E.D. Pa. Apr. 29, 2021); *United States v. Wadlington*, 2022 WL 206173, at *1 (E.D. Pa. Jan. 24, 2022).

the "other write and motions" language in the plea agreement, the Motion is not barred.

B. <u>Damon is unique to the Third Circuit; favorable law in other Circuits</u>. The *Damon* precedent is unique to the Third Circuit. In fact, no other Circuit has ever ruled that a waiver of appeals and collateral attacks bars § 3583(e)(1) relief. Additionally, other Circuits have considered defendants' motions under § 3583(e)(2), a sister statute[3] to § 3583(e)(1), to not be collateral attacks on the sentence, and therefore not prohibited by the standard waiver language. For both of these additional reasons, this Court should not apply *Damon* absent the broader "other writs and motions" waiver not present here.

C. <u>The waiver could not have been knowing</u>. In any case, regardless of the two preceding subsections, Mr. Mogilyansky could not have *knowingly* waived his § 3583(e)(1) rights in 2009 unless he or his counsel Jack McMahon, Esq. had a crystal ball or a time machine. They did not. Moreover, as most attorneys did at the time, Mr. McMahon expressly advised Mr. Mogilyansky that his plea agreement waiver would not bar the exact type of motion he is now pursuing. See Declaration of Andrew Mogilyansky attached hereto as <u>Exhibit S</u> (continuing the exhibit numbering from the Motion for ease of future reference and presentation at the hearing). Given Mr. Mogilyansky's clear recollection of his 2009 discussions with his counsel at the time regarding this, the waiver in

---

[3] 18 U.S.C. § 3583(e)(2) governs modification of supervised release terms, while 18 U.S.C. § 3583(e)(1) governs early termination of supervised release.

his plea agreement still should not be applied to bar the Motion for these factual reasons, regardless of the legal points expressed in (A) and (B) above.

II.    **Psychological Questions**:

**Government's Argument**: The psychological records are deficient as follows:

A.    The two reports attached as Exhibits A and B to the Motion are not evaluations.

B.    There is no current evaluation report, which would be particularly useful.

C.    In his 2009 evaluation, Dr. Samuel did not have access to the PSR and was therefore unaware of Mr. Mogilyansky's involvement in the prostitution service and exact conduct. He therefore could not consider associated risks of reoffense.

D.    Notably absent from the Opposition and Dr. Heilbrun's opinion letter is any mention that with all the same information, the Probation-appointed expert from J.J.P.I. reached the same conclusions in 2016 with the benefit of the final PSR, more time than Dr. Samuel did in 2009, and a surprise polygraph test.

E.    There is no analysis of Mr. Mogilyansky viewing adult pornography in 2017.

F.    There is a question about how Mr. Mogilyansky is able to control his "urges."

G.    The Government's consultant, Dr. Heilbrun, whose report and CV are the only exhibits to the Opposition, performed a "file review" of Dr. Samuel's 2009 evaluation and the 2026 summary and treatment reports from Dr. Samuel and Dr. Seraydarian. This "file review" identified the above [alleged] deficiencies, which the Government believes to be relevant to the Motion.

**Defendant's Response**:

A.    The Motion did not claim that Dr. Seraydarian's treatment report and Dr. Samuel's summary letter were evaluation reports. They were clearly not. The

Government has defeated a strawman of its own creation. While the Motion did cite multiple evaluations conducted *prior to 2026*, all of which reached the same Low Risk conclusions, it included the two 2026 *non-evaluation* reports from a current counseling psychologist and an expert who performed prior evaluations solely as such, not as evaluations themselves.

B. The Government's consultant Dr. Heilbrun opined that a current evaluation of Mr. Mogilyansky that is "reasonably impartial, comprehensive, and relevant to the request for early termination of his supervised release […] could be particularly useful for the court in making a decision on" the Motion. Such an evaluation has now been performed by Dr. Steven Samuel and is attached as <u>Exhibit T</u> hereto. The evaluation comprehensively analyzes Mr. Mogilyansky's historical and current circumstances, his risk profile, and other factors related to his eligibility for the early termination of supervised release. **There are now five (5) evaluation reports in existence, issued over the past 17 years by three (3) different psychologists, including one appointed at Probation's direction, all uniformly concluding that Mr. Mogilyansky has no psychosexual disorders and a Low Risk of reoffending.**

C. The Preliminary Statement in Dr. Samuel's report addresses the other points made by Dr. Heilbrun. This particularly includes resolving Dr. Heilbrun's confusion regarding Dr. Samuel's lack of knowledge of the information contained in the PSR. Dr. Samuel clarifies that he **did** consider a *draft* PSR during his 2009 evaluation and was fully aware of the information relating to Mr. Mogilyansky's involvement in the prostitution service. He clarifies that

when he wrote in his 2009 report that he did not have access to the PSR, he meant the *final* PSR, not the *draft* PSR which was still being finalized, and which he did review. He also knew about the facts of Mr. Mogilyansky's conduct from other sources, such as the indictment, as well as from Mr. Mogilyansky and his attorney. With all that knowledge, he still reached the Low Risk conclusion in 2009, then again in 2017, and he now reaches the same conclusion in 2026. Notably, back in 2009, he was extensively cross-examined during the sentencing hearing by Ms. Morgan, the same prosecutor representing the Government today. This cross-examination happened *after* the issuance of the *final* PSR and was the time for Ms. Morgan to contest any of Dr. Samuel's background knowledge and conclusions. Judge McLaughlin was also aware of the PSR's contents, having just adopted its final version. In the end, Judge McLaughlin stated that she was impressed with Dr. Samuel's testimony, accepted his findings. **Judge McLaughlin also stated on the record that she did not believe Mr. Mogilyansky would ever commit another crime, and that the public did not need to be protected from him**. Her words were a foreshadowing of Mr. Mogilyansky's remarkable rehabilitation. It is disappointing that the Government urges this Court to focus only on Mr. Mogilyansky's past, and to ignore the great accomplishments he has made during the last decade.

D. In any case, Dr. Samuel was not alone in reaching the Low Risk and no psychosexual disorder conclusions notwithstanding the additional, uncharged conduct described in the PSR. **At Probation's referral shortly after Mr.**

**Mogilyansky's release from prison, a psychologist at J.J. Peters Institute reached the same exact Low Risk and no psychosexual disorder conclusions in 2016 as Dr. Samuel did in 2009, with the benefit of the final PSR**. The J.J.P.I. psychologist also had a direct line to Mr. Mogilyansky's probation officer, six months' worth of weekly meetings with Mr. Mogilyansky, and a surprise polygraph testing at the end.

E. The revisiting of Mr. Mogilyansky's non-violative viewing of legal adult pornography in 2017 is another inflammatory distraction. The Government knows well that back in 2017, Probation was fully aware of the type of pornography it was (adult, legal and non-risky), on what devices it was viewed (monitored ones), and whether it was a violation of Mr. Mogilyansky's supervised release (it was not). Based on all that information, Probation chose in 2017 not to request any modifications of supervised release conditions to prohibit or limit viewing of pornography. While Probation initially requested a modification to re-evaluate Mr. Mogilyansky, it withdrew that request after a review of the submissions and evaluations made by Mr. Mogilyansky in those short and uneventful 2017 proceedings. **The fact that the Government cites to this legal, non-violative, inconsequential and long-resolved issue from 2017 demonstrates the futility of their opposition to the Motion. During the last l0.5 years, Mr. Mogilyansky has been under the vigilant supervision of the United States Probation Office, and he has proven that he has learned from his mistakes and has dedicated himself to becoming a law abiding citizen.**

F.  The question about how Mr. Mogilyansky "controls his urges" is a red herring. All five evaluations by three psychologists have uniformly concluded, **Mr. Mogilyansky has no "urges" to control – because he does not suffer from any psychosexual disorders.**

G.  Finally, Dr. Heilbrun's letter to Ms. Morgan is also not an evaluation, but by his own admission, merely a "file review" of a 17-year-old evaluation, a summary letter, and a treatment report. He points out the obvious: that the summary letter and the treatment report are not evaluations. He incorrectly states that Dr. Samuel, the expert in the 17-year old evaluation, did not have access to the information contained in the PSR (misconstruing an admittedly confusing statement by the expert that he did not have access to the PSR, which, as Dr. Samuel has clarified, was meant to state that he did not have access to a *final* PSR). Dr. Heilbrun also expressly states that he does not and cannot provide any opinion as to Mr. Mogilyansky's risk. Lacking any adequate information for such an evaluation, Dr. Heilbrun's letter changes nothing about the conclusions contained in five (5) comprehensive evaluations by highly competent psychologists who did have access to all such information. The Court should disregard Dr. Heilbrun's "file review" letter as it expressly disclaims any meaningful insight into Mr. Mogilyansky's current functioning and risk or reoffending. Notwithstanding this, most if not all points contained in Dr. Heilbrun's letter have been more than adequately addressed by Dr. Samuel's current evaluation report attached to this Reply.

### III.    Post-Release Conduct

**Government's Argument:**

The facts presented by Mr. Mogilyansky are nothing special. All they demonstrate is mere compliance with supervised release conditions. Terminating supervised release is improper on scant basis and would amount to the "exception swallowing the rule" relief from supervised release.

**Defendant's Response**:

A. The controlling Third Circuit authority is *United States v. Melvin*, 978 F.3d 49 (3d Cir. 2020). Contrary to The Government's position, under *Melvin*, a defendant does not need to show exceptional, extraordinary, new, or unforeseen circumstances before the Court may grant early termination. Simply said, a meaningful track record of mere compliance and reasonable progress, combined with low risk, could and should be enough. In other words, it is the "rule," not an exception, that a defendant can earn early termination by a sufficiently long period of lawful, compliant behavior and orderly reintegration. **Mr. Mogilyansky easily meets and beats this standard.**

B. This said, it is crystal clear that Mr. Mogilyansky's post-release recovery, reintegration and success in all aspects of life is not just compliant or above average: it is plainly and undisputedly exceptional and extraordinary. As letters to the Court from multiple non-family, unbiased third-party witnesses show, in the decade after his release, **Mr. Mogilyansky has achieved what can only be**

**described as spectacular reintegration, and success**[4]. In addition to excelling professionally and socially, Mr. Mogilyansky, without being required to do so, he also established robust decision-making and risk avoidance processes, which include his self-chosen counseling with Dr. Seraydarian, his choice of George Bochetto as his mentor, among many other stability-enshrining steps which are self-evident from the letters attached to the Motion. The Government's claim that all Mr. Mogilyansky can show is ordinary compliance with supervised release conditions is a disappointing understatement, which is belied by the numerous testimonials that describe his remarkable rehabilitation . His post-offense rehabilitation far exceeds the standards articulated in *Melvin*.

## IV.    Detailed Analysis of Damon

This section contains an expanded and more detailed argument regarding the Damon precedent, provided in addition to Part I in the beginning of this Brief, while following the same bullet-point subject area designations as Part I.

### A. Damon Does Not Control Because This Motion is Neither an Appeal nor a Collateral Attack

The Government's waiver argument fails because the Motion is neither a direct appeal nor a collateral attack on the sentence. The plea agreement provides that Mr. Mogilyansky "waives all rights to appeal or collaterally attack" his conviction, sentence, or any other matter relating to the

---

[4] As mentioned in the Motion, the undersigned counsel believed that the Court would rather hear from people who have developed their opinions of Mr. Mogilyansky without the love and duty associated with being his family members. With the exception of Mr. Mogilyansky's wife, all other letters were written by people who have no family ties to him. These are reputable members of society who have no affinity to Mr. Mogilyansky or reason to say positive things about him, other than if such things stem from his character and morals.

prosecution, and identifies appeal and collateral-attack statutes as the covered procedural vehicles. It does not state that Mr. Mogilyansky waived the right to file "any other writ or motion," nor does it expressly waive any future statutory request for modification or early termination of supervised release. That textual difference from is dispositive.

The Motion proceeds under 18 U.S.C. § 3583(e)(1), which authorizes the Court to terminate supervised release after consideration of the applicable § 3553(a) factors where termination is warranted by the defendant's conduct and the interest of justice. Such a motion does not ask the Court to vacate, reverse, or invalidate the original sentence. It instead asks the Court to exercise the continuing authority Congress conferred over the administration of supervised release. That is not an appeal. Nor is it a collateral attack.

The Government's reliance on *United States v. Damon*, 933 F.3d 269 (3d Cir. 2019), therefore overreads both *Damon* and the plea agreement. *Damon* involved materially broader waiver language than the language here. The relevant distinction is not whether supervised release is part of the sentence; it is whether the defendant agreed to waive the particular procedural mechanism now being invoked. Here, the agreement waived appeal and collateral attack rights, but it did not include a broad catchall waiver of "any other writ or motion." The Court should enforce the waiver as written, not expand it beyond its terms.

The surrounding language of the plea agreement confirms that result. The plea agreement separately provides that nothing in the agreement limits the Government's comments and responses in "any post-sentencing matters." That clause shows that post-sentencing proceedings *were* in fact contemplated. If the parties had intended to bar every future motion affecting supervised release, they would have said so.

The Government's position would convert a waiver of appellate and collateral-review rights into a waiver of *any* statutory motion that may affect the execution or duration of supervised release. That is not what the agreement says. Plea waivers are enforced according to their terms; they are not enlarged by implication. A § 3583(e)(1) motion accepts the original judgment and asks whether continued supervision remains warranted now. That prospective inquiry is fundamentally different from an appeal or collateral attack challenging the legality of the sentence imposed.

The Government's own Opposition recognizes that the governing early-termination framework is statutory and discretionary. It cites the § 3553(a) factors, § 3583(e)(1), and the Sentencing Commission's supervised-release guidance as the framework for deciding whether termination is appropriate. It also acknowledges that, under *United States v. Melvin*, 978 F.3d 49 (3d Cir. 2020), a defendant need not show exceptional, extraordinary, new, or unforeseen circumstances before the Court may grant early termination. Those authorities address the merits of the Court's discretionary § 3583(e)(1) determination; they do not convert the Motion into a direct appeal or collateral attack.

Numerous District courts within this Circuit have recognized the same distinction when plea agreements lack *Damon*-style catchall language. See *United States v. Crews*, No. CR 10-663-5, 2020 WL 6581430, at *2 (E.D. Pa. Nov. 10, 2020); *United States v. Mabry*, 528 F. Supp. 3d 349 (E.D. Pa. 2021); *United States v. Pearson*, 2024 WL 1936226, at *2 (E.D. Pa. May 1, 2024); *United States v. Tarboro*, 2023 WL 3821812, at *2 (E.D. Pa. June 5, 2023); *United States v. Baez*, 2024 WL 1743752, at *2 (E.D. Pa. Apr. 23, 2024). Those decisions are persuasive here because this plea agreement contains only appeal and collateral-attack language, not a separate

waiver of "any other writ or motion." The Government's reliance on *Damon* depends on importing language that is absent from the agreement.

The Government does identify three non-binding decisions in which sister District Courts ruled the opposite way. See *United States v. Clark*, 2021 WL 3737195 (E.D. Pa. Aug. 24, 2021); *United States v. Thompson*, No. 09-00797-1, ECF No. 46 (E.D. Pa. Apr. 29, 2021); *United States v. Wadlington*, 2022 WL 206173, at *1 (E.D. Pa. Jan. 24, 2022). These three cases should not control here, particularly because *Mabry*, *Crews*, *Pearson*, *Tarboro*, and *Baez* correctly enforced the "appeals and collateral attacks" waiver strictly according to its text: it bars appeals and collateral attacks only, not ordinary statutory motions under § 3583(e)(1).

The Court should therefore reject the Government's threshold waiver objection. The plea agreement does not bar the Motion as a matter of law. The Motion is properly before the Court under § 3583(e)(1), and the Court may proceed to determine whether early termination is warranted under the statutory factors and the interest of justice.

### B. Other Circuits Confirm That Statutory Supervised-Release Motions Are Not Ordinary Collateral Attacks

Persuasive out-of-Circuit authority reinforces the same conclusion.

First, Damon is unique to the Third Circuit only. **No other Circuit ever issued a precedential decision holding that a § 3583(e)(1) motion for early termination of supervised release is barred by any plea agreement waiver, regardless of its language.** This should instill extra caution and guide District Courts in our Circuit not to expand *Damon* to broadly bar § 3583(e)(1) relief in cases, such as Mr. Mogilyansky's, where the plea agreement language does not contain the same catch-all "other writs and motions" waiver as Damon.

Moreover, a number of decisions on similar § 3583(e) topics in other Circuits support the position that a § 3583(e)(1) motion is not a collateral attack barred by the "appeals and collateral

attacks" waiver. The closest authority is the Seventh Circuit's decision in United States v. Neal, 810 F.3d 512 (7th Cir. 2016). In *Neal*, the Seventh Circuit held that § 3583(e)(2) permits a district court to modify supervised-release conditions and recognized that the statute gives courts a continuing mechanism to adjust supervision. The court distinguished an improper late collateral challenge to the original sentence from a permissible request directed to current supervised-release conditions.

That reasoning applies here. Section 3583(e)(1) and § 3583(e)(2) are neighboring provisions in the same statutory subsection, and both authorize the sentencing court to revisit supervised release after considering specified § 3553(a) factors. See 18 U.S.C. § 3583(e). A motion under § 3583(e)(1) is therefore best understood as a request for prospective statutory relief from ongoing supervision, not as a belated attack on the legality of the sentence imposed years earlier.

The Seventh Circuit's decision in United States v. Monroe, 580 F.3d 552 (7th Cir. 2009), supports the same distinction in the sentence-modification context. Monroe held that a § 3582(c)(2) motion was fundamentally different from an appeal or collateral attack because the defendant did not claim sentencing error, but instead sought prospective relief based on a later development external to the original judgment. The Tenth Circuit reached a similar conclusion in United States v. Chavez-Salais, 337 F.3d 1170 (10th Cir. 2003), reasoning that conventional collateral attacks include habeas-type remedies and that a statutory modification motion is not reasonably understood as a collateral attack when it seeks prospective modification rather than invalidation of the original judgment. See discussion of Chavez-Salais in Mabry and United States v. Akel, 388 F. Supp. 3d 1248 (D. Nev. 2019).

The adverse supervised-release-condition cases are distinguishable. In United States v. Scallon, 683 F.3d 680 (5th Cir. 2012), the Fifth Circuit enforced a broadly worded waiver where

the defendant's § 3583(e)(2) motion directly attacked the supervised-release terms imposed as part of the original sentence. Scallon distinguished sentence-modification cases because the defendant there was using § 3583(e)(2) to attack the original supervised-release terms themselves. Likewise, Neal distinguished Lussier, Hatten, and Gross as cases involving efforts to use § 3583(e)(2) to evade ordinary appellate or collateral-review channels for attacking the original sentence.

This case is not Scallon, Lussier, Hatten, or Gross. Mr. Mogilyansky does not contend that the original sentence was illegal, unconstitutional, jurisdictionally defective, or wrongly imposed. He invokes § 3583(e)(1) as Congress wrote it: as a statutory mechanism permitting the sentencing court to determine whether continued supervision remains warranted by his conduct and the interest of justice. Because the plea agreement waived only appeals and collateral attacks and did not waive other writs, motions, post-sentencing statutory applications, or § 3583(e)(1) relief, the Motion is not barred.

In sum, no precedential decision from any other Circuit appears to hold that a plea-agreement waiver bars a defendant's motion for early termination of supervised release under § 3583(e)(1). The Government's waiver argument rests on Third Circuit authority – *Damon* – and on three (3) nonbinding district-court decisions within this District which are outweighed by five (5) district-court decisions going the other way on the same subject. Out-of-Circuit appellate authority addressing analogous statutory modification motions supports the opposite principle: prospective statutory modification relief is not an ordinary appeal or collateral attack. Therefore, with the "other writs and motions" language absent in Mr. Mogilyansky's plea waiver, the Motion and the requested relief thereunder are not barred by *Damon*.

### C. In Any Event, the Waiver Cannot Be Construed to Bar Relief Mr. Mogilyansky Was Specifically Advised Would Remain Available

Furthermore, even if the Court were to view the waiver language as ambiguous, that ambiguity should not be resolved to extinguish § 3583(e)(1) relief. Damon was decided in 2019, approximately a decade after the March 13, 2009, Plea Agreement in this case. United States v. Damon, 933 F.3d 269 (3d Cir. 2019). The waiver therefore should be construed according to the parties' reasonable understanding at the time the agreement was executed, not by later expanding the agreement to incorporate a subsequently decided case involving materially broader waiver language.

That is precisely the contract-law approach applied in United States v. Mabry, 528 F. Supp. 3d 349 (E.D. Pa. 2021). There, the court distinguished Damon because Damon's waiver included broad language barring "any appeal, any collateral attack, or any other writ or motion," while the narrower waiver before the court barred only appeals and collateral attacks. The court in *Marby* also explained that the "plain meaning" of the plea agreement must be understood as of the time the agreement was executed, and that a later-decided case could not supply notice that an older waiver barred a motion for early termination of supervised release. The same reasoning applies here.

The record further confirms that Mr. Mogilyansky did not knowingly and voluntarily waive the right to seek early termination of supervised release. According to Mr. Mogilyansky's declaration attached hereto as Exhibit S, at the time of the plea agreement he was expressly advised by counsel that he would be able to seek to shorten the term of his supervised release after completing his prison sentence by filing the very type of motion now before the Court. That advice

is directly inconsistent with any contention that Mr. Mogilyansky knowingly surrendered the right to pursue § 3583(e)(1) relief[5].

This is not an argument that counsel's advice overrides unambiguous written terms. It is an argument that the written terms do not unambiguously waive § 3583(e)(1) relief in the first place. Where the agreement says only "appeal" and "collateral attack," where it omits Damon-style language waiving "any other writ or motion," and where the defendant was affirmatively advised that this precise statutory remedy would remain available, the waiver cannot fairly be construed to bar the Motion.

## Conclusion

During the decade that has passed since his release from prison, Andrew Mogilyansky has completely reintegrated into society and rebuilt himself, carrying a law-abiding and prosocial life, reinventing himself professionally while being transparent about his past with others. His road to redemption has truly been a remarkable journey. That journey is reflected in the letters from numerous witnesses, all of whom have recognized that despite the stigma of his conviction and having to start "from scratch," Mr. Mogilyansky has led an exemplary life of personal, social and professional success. This recovery and reintegration is fully consistent with the risk profiles determined by the psychologists, and the forward-looking stability expectations that their expert reports expressed for Mr. Mogilyansky in various ways.

---

[5] As a practical matter, prior to 2019 when *Damon* was decided, unless they had a time machine or a crystal ball and could predict *Damon*, most attorneys would have advised their clients the same. Also, since the vast majority of federal criminal matters are resolved by way of a plea agreement, and since most plea agreements contain the same "appeal and collateral attack" language as Mr. Mogilyansky's, an application of *Damon* to prohibit early termination motions to all such defendants would effectively stop most early terminations in their tracks. This would be plainly contrary to the ends of justice in many obvious ways.

Mr. Mogilyansky's reintegration and stability are nothing short of spectacular. His risk profile cannot possibly be any lower. His recovery cannot possibly be any better. He is the epitome of the justice system working with 100% perfection, achieving all its rehabilitation goals to the fullest. The law, the facts, fairness and common sense dictate that Mr. Mogilyansky should be relieved of the remaining 4.5 years of his supervised release. It is a just and fair reward for his achievements, setting an example for others to strive to live their life after prison the way he has lived his.

Respectfully submitted,

/s/ BRIAN J. MCMONAGLE, ESQUIRE
MCMONAGLE PERRI MCHUGH MISCHAK DAVIS
BRIAN J. MCMONAGLE, ESQUIRE
1845 Walnut Street, 19th Floor
Philadelphia, PA 19103
Tel: (215) 981-0999
Fax: (215) 981-0977
E-mail: bmcmonagle@mpmpc.com
*Counsel for Andrew Mogilyansky*

DATED:    May 20, 2026

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion for Early Termination of Supervised Release was served via the Court's ECF system upon the Office of the United States Attorney for the Eastern District of Pennsylvania.

Respectfully submitted,

/s/ BRIAN J. MCMONAGLE, ESQUIRE
MCMONAGLE PERRI MCHUGH MISCHAK DAVIS
BRIAN J. MCMONAGLE, ESQUIRE
1845 Walnut Street, 19th Floor
Philadelphia, PA 19103
Tel: (215) 981-0999
Fax: (215) 981-0977
E-mail: bmcmonagle@mpmpc.com
*Counsel for Andrew Mogilyansky*

DATED:      May 20, 2026