## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | |
| | : | **NO. 08-711** |
| **ANDREW MOGILYANSKY** | : | |

**Perez, J.**                                                                 **June 12, 2026**

### MEMORANDUM

In our criminal system, supervised release is intended to facilitate individuals' reintegration into their communities after periods of incarceration. *United States v. Johnson*, 529 U.S. 53, 59 (2000). Its primary purpose is to rehabilitate, not to punish. *See id.*; *see also United States v. Murray*, 692 F.3d 273, 280 (3d Cir. 2012). Accordingly, sentencing courts must "explain and justify" their decision to impose supervised release within the parameters of the sentencing factors set forth in 18 U.S.C. § 3553(a). *Murray*, 692 F.3d at 281; *United States v. Joline*, 662 F.3d 657, 659–60 (3d Cir. 2011). Similar considerations come into play in determining whether to terminate supervised release early. *See* 18 U.S.C. § 3583(e)(1). Such relief is statutorily available to defendants who have shown early termination is warranted based on their conduct and in the interest of justice. *Id.*

On April 30, 2009, pursuant to a written plea agreement, Defendant Andrew Mogilyansky pled guilty to one count of traveling for the purpose of engaging in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b), and three counts of engaging in illicit sexual conduct in foreign places, in violation of 18 U.S.C. § 2423(c). He was sentenced to 97 months of imprisonment followed by 15 years of supervised release. Mogilyansky was released from incarceration in 2015 and has completed over a decade of supervised release with no infractions or violations of the conditions of his supervision.

1

Mogilyansky moves now for early termination of supervised release. ECF No. 67. In support of his motion, Mogilyansky submitted a number of psychological evaluations, counseling reports, and letters. *Id.*; *see also* ECF No. 77. The government and the United States Probation Office oppose early termination. The government submitted an expert report highlighting deficiencies in some of the psychologist reports Mogilyansky submitted in support of his motion, ECF No. 76, and Mogilyansky responded with an additional evaluation, ECF No. 77-2. On June 2, 2026, the Court held a hearing on the motion, where it heard and received evidence from witnesses and arguments from counsel for the defense and for the government. No objections were made to the Court's consideration of any of the evidence submitted either at the hearing or in the filings on the docket.

For the reasons set forth below, the Court will modify the domestic travel restrictions and, if Mogilyansky remains violation-free for 12 months following the issuance of the Order, supervised release will terminate.

## I.    Background

### A.    Underlying Offense

No one disputes that the facts and offenses to which Mogilyansky pled guilty are egregious. In December 2003, Mogilyansky, a dual citizen of Russia and the United States, traveled from Philadelphia to St. Petersburg, Russia. Tr. Change of Plea Hr'g at 21:4–22:14, 23:15, Apr. 30, 2009, ECF No. 36. While in Russia, he met with two thirteen-year-old girls and one fourteen-year-old girl, whom he transported from the orphanage where they lived to an apartment he owned. *Id.* There, he engaged in sexual acts with the girls in exchange for money and other things of value. *Id.* The Presentence Investigation Report ("PSR") created by the U.S. Probation Office paints an even darker picture than the facts to which Mogilyansky pled guilty. He and an acquaintance in Russia developed a website that sold prostitution services online. PSR ¶ 9. Mogilyansky invested

money into the business with the expectation that he would receive a percentage of the profits. *Id.* ¶ 10. The individuals advertised as prostitutes included adult women and minor girls, including the three girls he retrieved from the orphanage. *Id.* ¶ 9.[1]

### B.    Plea Agreement

On July 30, 2009, Mogilyansky pled guilty to four charges pursuant to a written guilty plea agreement and Federal Rule of Criminal Procedure 11(c)(1)(C). ECF No. 36 at 31–32. The written agreement included a specific Sentencing Guidelines range of 78 to 97 months of incarceration. ECF No. 32 at 9. As part of the plea agreement, Mogilyansky also agreed to pay restitution in the amount of $5,000 to each of the three victims.[2] ECF No. 32 at 7. After reviewing the probation officer's recommendations and hearing arguments from the parties, the Court accepted the plea on July 30, 2009. Hr'g Tr. at 9:4–14, July 30, 2009, ECF No. 41.

In addition to agreeing to a specific sentence, Mogilyansky "voluntarily and expressly waive[d] all rights to appeal or collaterally attack [his] conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law." ECF No. 32 at 9–10.

---

[1] Mogilyansky originally objected to the inclusion of these facts in the PSR, arguing he did not admit to them and that he disputed their truth. Sentencing Hr'g Tr. at 8–9, ECF No. 51. However, he withdrew his objection at the sentencing hearing rather than requiring the government to present evidence to show the facts were true by a preponderance of the evidence. *Id.* at 13–15. At sentencing, the court may consider any information concerning the defendant's background, character, and conduct, *see* 18 U.S.C. § 3661, so long as it has "sufficient indicia of reliability to support its probable accuracy." U.S. Sent'g Guidelines Manual § 6A1.3 cmt.; *see also United States v. Paulino*, 996 F.2d 1541, 1547 (3d Cir. 1993) (explaining the standard "should be rigorously applied").

[2] Mogilyansky also entered a settlement agreement with the victims in a civil lawsuit, which his counsel described as "a very substantial payment to each of the victims from [Mogilyansky's] personal resources" and that the amount was "a very substantial portion of those resources." Tr. Mot. Hr'g at 10:24–11:10, June 2, 2026, ECF No. 83.

C.    **Sentencing**

At a sentencing hearing on September 16, 2009, the Court heard testimony from several witnesses on both sides, including Dr. Steven Samuel, and a reading of victim impact statements from two of the victims who, by then, were around 18 years old. *See* Tr. Test. Dr. Steven Samuel, Sept. 16, 2009, ECF No. 46; Sentencing Hr'g Tr., Sept. 16, 2009, ECF No. 51. Dr. Samuel is a licensed clinical and forensic psychologist who, at the time, worked as a clinical associate professor at Thomas Jefferson University Hospital. ECF No. 46 at 4:1–5. From 1996 until 2008, Dr. Samuel was also a member of Megan's Board, an organization run by the State of Pennsylvania through which he evaluated over 1,000 individuals who had been convicted of a sexually violent offense. *Id.* at 4:15–5:12. In issuing its sentence, the Court found Mogilyansky's crimes and the permanent harm he caused the victims to be grave. ECF No. 51 at 83. The Court also recognized Mogilyansky's background, his remorse, and his attempts to make amends. *Id.* The Court accepted Dr. Samuel's testimony that Mogilyansky would not again commit crimes; however, the Court noted that there were limitations to the testimony with respect to the unknowns of what the future would bring. *Id.* at 84.

The Court sentenced Mogilyansky to the highest sentence in the stipulated guidelines range—97 months' imprisonment—noting that although Mogilyansky is a "very, very impressive" individual, his accomplishments did not outweigh the nature of the crime. *Id.* at 85; *see also* Judgment, ECF No. 45 at 2. The Court also imposed a sentence of 15 years' supervised release. ECF No. 45 at 3. In addition to the Eastern District of Pennsylvania's standard conditions, the Court ordered Mogilyansky to register with the state sex offender registration agency as directed by the probation officer, to submit to an evaluation for a mental health program, and to follow the probation officer's directions regarding contact with minors other than his own children. *Id.* at 4.

### D.    Post-Release Conduct and Supervision

Mogilyansky was released from the Bureau of Prisons in 2015 and began his term of supervision. He has now successfully completed more than a decade of his supervised release. Tr. Mot. Hr'g at 42:12–25, 43:8–18, June 2, 2026, ECF No. 83. In January 2016, the U.S. Probation Office ("Probation") requested a modification of Mogilyansky's conditions of supervision to include computer monitoring. ECF No. 54. Mogilyansky did not oppose the request, and the Court approved the request on February 1, 2016. *Id.* In March 2023, Probation agreed to allow Mogilyansky's employer, a law firm, to monitor his work computers because there was concern about unauthorized access to client information, but Probation retained responsibility for monitoring Mogilyansky's personal devices. ECF No. 83 at 25:10–26:2. This "informal" change to Mogilyansky's conditions was done without the Court's authorization. *Id.* at 27:2–6. Probation has not cited Mogilyansky for any violations of the conditions of his supervised release— electronic or otherwise. *Id.* at 43:17–18. Additionally, Probation has often approved Mogilyansky's travel for work and even approved his request to work with a minor child and her family on a case. Mot. Ex. M, ECF No. 67-13.

On August 29, 2017, at Probation's direction, Mogilyansky was evaluated by Dr. Alisha Kalos of the Joseph J. Peters Institute ("JJPI"). *See* Pet. Supervised Release at 2, Dec. 5, 2017, ECF No. 63. Dr. Steven E. Samuel, the licensed clinical and forensic psychologist who evaluated Mogilyansky in 2009, also evaluated Mogilyansky on November 16, 2017. *Id.* Both doctors concluded that Mogilyansky was not in need of sex offender treatment. *Id.*[3] Regardless,

---

[3] These evaluations were completed after Probation discovered Mogilyansky viewed adult pornographic images on his computer. Although such conduct was not a violation of his conditions of supervised release, Probation deemed it "may be considered risky sexual behavior," and sought a professional sex offender evaluation to determine whether treatment was necessary. Pet. Supervised Release at 2, Sept. 15, 2017, ECF No. 55. Based on the results deeming Mogilyansky not to be at risk of re-offending, Probation rescinded its petition for modification of supervised release. ECF No. 63.

Mogilyansky independently decided to begin pursuing mental health treatment and was treated from August 31, 2017, to the present by Dr. Don G. Seraydarian. Mot. Ex. A, ECF No. 67-1. Dr. Seraydarian submitted a letter in support of the Motion summarizing Mogilyansky's counseling and treatment and concluding Mogilyansky's risk for recidivism is "infinitesimal." *Id.*

With the support of his prior attorney George Bochetto[4] and his probation officers, Mogilyansky started his own business, Litigation Support Services, LLC ("LSS"), through which he provides paralegal and litigation-support services. *See* Ltr. from George Bochetto, Mot. Ex. F, ECF No. 67-6. He also manages a law firm office. Ltr. from James S. Tupitza, Esq., Mot. Ex. G, ECF No. 67-7. Through this work, he has meaningfully assisted a number of clients and lawyers who submitted letters in support of his motion. *See* Mot. Ex. Nos. F–P, ECF Nos. 67-6–67-16. For example, Mogilyansky provided services to an individual with a disability in connection with a debt collection dispute at no charge. ECF Nos. 67-8 & 67-12. He also provided litigation support with Probation's approval to a young girl engaged in civil litigation arising from a traumatic assault she suffered. ECF No. 67-13. The client letters reference Mogilyansky's professionalism, transparency, and dedication to their cases. *See, e.g.*, ECF Nos. 67-12, 67-13, 67-15. In each of his business relationships, Mogilyansky has disclosed his criminal conviction and taken accountability for his conduct. *See, e.g.*, ECF Nos. 67-11, 67-12, 67-14, 67-15.

Mogilyansky also maintains close personal relationships, in particular with his wife and children. When he was first released, his children were still in elementary school. Mogilyansky and his wife took them on a ski trip to explain that he had been in prison but did not explain the circumstances of his offense due to their age. Although Mogilyansky's children later learned more

---

[4] Mr. Bochetto was the primary attorney who represented Mogilyansky in civil matters while he was incarcerated and who also provided research support and consultation in connection with Mogilyansky's criminal proceedings. ECF No. 83 at 8:7–19, 16:1–13.

through a Google search, they have not had detailed conversations regarding the offense conduct. However, Mogilyansky and his wife worked with the children's middle school to create a framework that would allow him to participate in school life and foster his children's studies and development while also ensuring the safety of other students. *See* ECF No. 86 at 5. The plan was reflected in a signed agreement between Mogilyansky and the school, which provided that the school would notify all parents of Mogilyansky's conviction so each could make their own decisions relating to their children's interactions with Mogilyansky and his family. *Id.* This resulted in "extremely productive and completely uneventful years" of Mogilyansky's participation in school activities and interactions with other families with no complaints. *Id.* at 6.

**II.        The Plea Agreement Does Not Bar Early Termination of Supervised Release.**

As an initial matter, the government argues that the appellate and collateral attack waiver provisions in Mogilyansky's plea agreement bar him from seeking early termination of his supervised release under 18 U.S.C. § 3583(e)(1). ECF No. 76 at 3. Mogilyansky disagrees. ECF No. 77 at 11. The Plea Agreement provides: "In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collaterally attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law." ECF No. 32 ¶ 9. Such waivers are valid if entered "knowingly and voluntarily." *United States v. Khattak*, 273 F.3d 557, 563 (3d Cir. 2001).

The government relies on *United States v. Damon*, 933 F.3d 269 (3d Cir. 2019), to argue that Mogilyansky waived his right to move for early termination of supervised release. ECF No. 76 at 3. In *Damon*, the defendant agreed to a five-year term of supervised release and waived the right to "file any appeal, any collateral attack, *or any other writ or motion*, including but not limited

to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed . . . ." 933 F.3d at 271 (emphasis added). The defendant then moved to terminate his supervised release after serving part of the term. *Id.* After the district court held that the waiver provision of his plea agreement barred the motion, Damon appealed. *Id.* at 272. The Third Circuit affirmed. *Id.* at 275. First, *Damon* construed the phrase "sentence imposed" to unambiguously include the terms of both imprisonment and supervised release, such that Damon could not "challenge" either. *Id.* at 273–74. In reaching this conclusion, the court relied on *United States v. Goodson*, 544 F.3d 529, 537–38 (3d Cir. 2008), which held that a waiver of the right to directly appeal a conviction or sentence encompasses the right to appeal the conditions of supervised release because a "sentence" includes the term of supervised release under 18 U.S.C. § 3583.[5] Second, the court found that Damon's motion "challenged" his sentence by seeking to shorten the imposed term of supervised release. *Damon*, 933 F.3d at 274–75. Therefore, Damon could not recast a challenge to his term of supervised release as a "post-sentence modification." *Id.* at 275. Finally, applying contract principles, the court held that Damon was bound to the terms of the plea agreement, and his § 3583(e)(1) motion fell within the scope of the waiver, so Damon could not move for early termination of supervised release. *Id.*

Mogilyansky distinguishes *Damon* because that waiver provision was broader. ECF No. 77 at 10–11. Specifically, unlike the waiver in *Damon*, Mogilyansky's plea agreement does not bar him from filing "any other writ or motion . . . which challenges the sentence imposed." *See* ECF No. 34. Furthermore, Mogilyansky argues that *Damon* was decided after he entered into his plea

---

[5] *Goodson* is distinguishable from the instant case because the defendant appealed a condition of supervised release requiring a warrantless search of his place of business on the grounds that it exceeded the court's authority. 544 F.3d at 533. Here, as discussed *infra*, Mogilyansky does not challenge the district court's authority to impose a term of supervised release or its reasoning underlying the term imposed.

agreement, so he could not "knowingly" waive his right to seek early termination at the time he agreed to the waiver provision. *Id.* at 16.

Courts in this district are split on whether *Damon* bars early termination when plea agreements involve waivers like Mogilyansky's. *Compare, e.g.*, *United States v. Wadlington*, No. 12-457-2, 2022 WL 206173, at *1 (E.D. Pa. Jan. 24, 2022) (finding § 3583(e)(1) motion constituted "challenge" to defendant's sentence, which included term of supervised release imposed), *with United States v. Tarboro*, No. 08-323-01, 2023 WL 3821812, at *1–2 (E.D. Pa. June 5, 2023) (quoting *United States v. Fluellen*, No. 09-497-1, 2022 WL 309159, at *6 (E.D. Pa. Feb. 2, 2022)) (finding narrower waiver provision without language precluding filing of "*any motion* that challenges the underlying sentence" did not bar motion for early termination of supervision and noting that *Damon* "focused significant attention on the 'challenges the sentence imposed' language").

The waiver provision in *Damon* is distinguishable from Mogilyansky's, which includes a waiver of the right to appeal or collaterally attack his conviction, sentence, or any other matter relating to the prosecution of the offense. It does *not* expressly bar him from filing "any other writ or motion." Nor does Mogilyansky's waiver explicitly bar a motion that "challenges the sentence imposed." *See United States v. Baez*, No. 11-CR-240-01, 2024 WL 1743752, at *3 (E.D. Pa. Apr. 23, 2024) (finding that identical waiver did not encompass § 3583(e)(1) motion, but noting that "[h]ad the plea agreement stated that Mr. Baez waived his right to file 'any appeal, any collateral attack, *or any other writ or motion* which challenges his sentence,' then the result may have been different" (internal punctuation omitted) (quoting *Damon*, 933 F.3d at 271)). Instead, the waiver in Mogilyansky's plea agreement applies more narrowly to appeals and collateral attacks only. *See id.* When entering into the plea agreement, Mogilyansky would not have understood the phrase

"appeal or collateral[]" attack to prohibit any motion as to his sentence. *See Tarboro*, 2023 WL 3821812, at *2. Therefore, *Damon* does not squarely apply to preclude Mogilyansky's requested relief.

Nor does *United States v. Oyerinde*, 784 F. App'x 111 (3d Cir. 2019). Relying on *Damon*, *Oyerinde* rejected a defendant's challenge to a district court order denying his early termination motion. *Id.* at 113. The court found that the defendant's motion, and "likewise" his appeal, contravened his appellate waiver because he sought to modify the term of supervised release imposed. *Id.* at 113–14. Additionally, the court disapproved of the defendant's claim that his motion relied on "post-sentence factual developments," characterizing his argument as a means to "avoid application of the appellate waiver provision." *Id.* at 113 (cleaned up). Finally, in a footnote, the court suggested that the government's decision not to invoke the waiver before the district court resulted from a tactical choice to focus on the merits, which "should not preclude them from relying on the appellate waiver to bar further review." *Id.* at 113 n.12.

*Oyerinde* is not binding authority. It came before the Third Circuit in a different procedural posture than the instant motion. Additionally, any discussion of the waiver provision's applicability to a motion for early termination of supervised release (as opposed to the appeal from a denial of one) is dicta. "The holding of *Oyerinde* was clearly limited to the defendant's waiver of the right to appeal the denial of the motion, and because the government had not invoked the waiver before the district court, the Court of Appeals did not decide the issue of whether a motion for early termination of supervised release is itself barred by the defendant's appellate waiver provision." *Tarboro*, 2023 WL 3821812, at *3; *see also Baez*, 2024 WL 1743752, at *2.

District courts have interpreted *Oyerinde* differently. Some have found that *Oyerinde* may bar a § 3583(e)(1) motion in the first instance, finding that the footnote implies the government

could have raised its waiver argument in the district court. *See, e.g.*, *United States v. Clark*, Nos. 06-205-7 & 06-207-5, 2021 WL 3737195, at *3 (E.D. Pa. Aug. 24, 2021) ("[*Oyerinde*] did not premise its decision on the case's posture as an appeal."); *United States v. Thompson*, No. 09-797, ECF No. 46 at 3–4 (E.D. Pa. Apr. 29, 2021) (explaining that *Oyerinde* held that a motion to terminate supervised release challenged the original sentence and was therefore a collateral attack). Others have found the footnote to be dicta because the issue in *Oyerinde* was whether the defendant could appeal the district court's denial of his motion, not whether he was barred from bringing the motion in the first place. *See, e.g., Tarboro*, 2023 WL 3821812, at *3 (limiting *Oyerinde* to the waiver of appeals and noting that because the government never invoked the waiver in the district court, the Third Circuit never reached whether the waiver barred the § 3583(e)(1) motion itself); *Baez*, 2024 WL 1743752, at *2 (noting that *Oyerinde* is unpublished and declining to follow it). The Court finds the authority distinguishing *Damon* and declining to follow *Oyerinde* to be more persuasive. A defendant like Mogilyansky, "who cites new developments such as his readjustment to society, does not attack the sentence itself. He invokes a statutory right to seek a modification of the sentence. The distinction is subtle but important." *Baez*, 2024 WL 1743752, at *3.

Having found that neither *Damon* nor *Oyerinde* precludes Mogilyansky's motion, the Court now turns to whether the motion constitutes a "collateral attack" of his sentence.[6] As both parties note, courts in this district are split on the issue.[7] A "collateral attack" is "[a]n attack on a

---

[6] A motion before a district court under 18 U.S.C. § 3583(e) is not an "appeal" because the Court is not reviewing a court's decision on the motion. *See Baez*, 2024 WL 1743752, at *2 (citing Black's Law Dictionary (9th ed. 2009)).

[7] *Compare United States v. Mabry*, 528 F. Supp. 3d 349, 353–54 (E.D. Pa. 2021) (quoting *United States v. Chavez-Salais*, 337 F.3d 1170, 1172 (10th Cir. 2003)) (holding that similar waiver barring appeals and collateral challenges to sentence or "manner in which the sentence was determined" did not bar § 3583(e)(1) motion because it was not an "appeal" or "collateral attack" based on those terms' ordinary meaning, and defendant would not understand the waiver to bar a motion to "prospectively . . . modify a sentence based on events occurring after the original sentence was imposed'); *United States v. Crews*, No. 10-663-5, 2020 WL 6581430, at *2 (E.D. Pa. Nov. 10, 2020) ("The instant

judgment in a proceeding other than a direct appeal; esp., an attempt to undermine a judgment through a judicial proceeding in which the ground of the proceeding (or a defense in the proceeding) is that the judgment is ineffective." *Collateral Attack*, *Black's Law Dictionary* (12th ed. 2024). Mogilyansky's motion does not attack his proceedings or Judge McLaughlin's initial imposition of supervised release. It seeks instead to end his supervised release early due to, *inter alia*, his efforts at rehabilitation and his current risk of recidivism, conditions that developed well after Judge McLaughlin imposed a 15-year term. The instant motion is, therefore, not an "appeal" or "collateral attack" of his sentence. *See, e.g.*, *United States v. Mabry*, 528 F. Supp. 3d 349, 354 (E.D. Pa. 2021). In reaching this conclusion, the Court is persuaded by its colleagues who have distinguished retrospective challenges to the imposition of supervised release from requests for modifications based on prospective developments that did not exist at the time of sentencing. *Id.* at 354; *Crews*, 2020 WL 6581430, at *2; *Baez*, 2024 WL 1743752, at *2–3; *Pearson*, 2024 WL 1936226, at *1–2; *Tarboro*, 2023 WL 3821812, at *2; *Fluellen*, 2022 WL 309159, at *6; *see also United States v. Chavez-Salais*, 337 F.3d 1170, 1172 (10th Cir. 2003) ("It is by no means obvious that a defendant's motion to modify his sentence . . .

---

motion does not constitute an appeal of Crews's sentence, request reconsideration of his sentence, or ask us to reverse or vacate any part of his sentence" and was therefore not barred by a similar waiver); *Baez*, 2024 WL 1743752, at *2–3 (identical waiver to Mogilyansky's did not bar § 3583(e)(1) motion because a defendant seeking early termination "cites new developments such as his readjustment to society [and] does not attack the sentence itself"); *United States v. Pearson*, No. 04-433, 2024 WL 1936226, at *1–2 (E.D. Pa. May 1, 2024) (identical waiver did not bar early termination motion because waiver did not explicitly reference a motion to terminate supervised release or § 3583(e)(1), and the phrase "any other provision of law" was insufficient to knowingly waive the right to bring the motion); *Tarboro*, 2023 WL 3821812, at *2 (quoting *Chavez-Salais*, 337 F.3d at 1172) (§ 3583(e)(1) motion was not a "collateral attack," and a defendant would not "reasonably" understand a motion to modify his sentence as a "collateral attack" on his sentence); *Fluellen*, 2022 WL 309159, at *6 (quoting *Chavez-Salais*, 337 F.3d at 1172) (finding § 3583(e)(1) motion is not an appeal or collateral attack and explaining that collateral attacks "complain about the substance of, or proceedings that determined, a defendant's original sentence or conviction")), *with Clark*, 2021 WL 3737195, at *3–4 (identical waiver barred § 3583(e)(1) motion because it "constituted a challenge to his original sentence," and defendant knowingly and voluntarily executed the waiver); *Thompson*, No. 09-797, ECF No. 46 at 4–5 (§ 3583(e)(1) motion "is an attempt to change or alter a sentence" and thus a collateral attack, but defendant did not knowingly waive right to file § 3583(e)(1) motion where waiver predated *Damon* and *Oyerinde*); *Wadlington*, 2022 WL 206173, at *1 (citing *Damon* and finding § 3583(e)(1) motion seeks to challenge "sentence" in violation of waiver because "sentence" includes term of supervised release).

would be reasonably understood as a 'collateral attack' on his sentence as opposed to a motion prospectively to modify a sentence based on events occurring after the original sentence was imposed.").

The language of the waiver and the plea colloquy further suggests that Mogilyansky could not have "knowingly" or "voluntarily" waived his right to bring the instant motion. First, the waiver includes multiple statutes but does not mention 18 U.S.C. § 3583 or the term "supervised release" at all. *See, e.g., Mabry*, 528 F. Supp. 3d at 354; *c.f. Chavez-Salais*, 337 F.3d at 1173. Similarly, the phrase "any other provision of law," without more, does not create a knowing waiver of the right to bring a § 3583(e) motion. *See Pearson*, 2024 WL 1936226, at *2. In the plea agreement, "any other provision of law" follows the terms "appeal" and "collateral attack" and several statutes that the terms encompass. Therefore, a defendant would likely not understand "any other provision of law" to include legal provisions other than an appeal or collateral attack on a sentence, such as a request to modify the term of supervised release based on developments that arose after sentencing.[8]

Nor did the colloquy conducted at Mogilyansky's plea hearing create a knowing waiver of the right to seek early termination. During the colloquy, Judge McLaughlin explained that the waiver limited Mogilyansky's appellate rights "even more so" by waiving his ability to "appeal or collaterally attack [his] conviction, sentence or any other matter relating to this prosecution, except under certain very narrow circumstances." ECF No. 39 at 18:14–21. Judge McLaughlin then delineated those circumstances. *Id.* at 18:24–19:10. Mogilyansky confirmed that he understood the waiver. *Id.* at 19:2–10. While the colloquy establishes that Mogilyansky waived his right to appeal

---

[8] As discussed at length, *Damon* prohibited challenges to supervised release based on "post-sentencing developments" as applied to a broader waiver than the provision at issue here. Therefore, *Damon* does not bar the Court from considering developments that have occurred since Mogilyansky was originally sentenced.

or collaterally attack his sentence, the court never indicated that a motion for early termination of supervised release could constitute an "appeal" or "collateral attack." The absence of such language from an otherwise thorough colloquy lends further support to Mogilyansky's argument that he did not enter into the plea agreement understanding that the waiver provision would bar any motion to terminate his term of supervised release on any basis. Accordingly, based on the language of the waiver provision and the colloquy, Mogilyansky could not have "knowingly" or "voluntarily" waived the right to move for early termination of supervised release based on conditions that arose after Judge McLaughlin's imposition of supervised release. *C.f. Monroe*, 580 F.3d 552, 557 (7th Cir. 2009) (describing motion for reduction of sentence as "of a fundamentally different character than an appeal or collateral attack" because rather than claiming the sentencing court erred, defendant simply asked the court "to consider revising his sentence in light of a development completely external to the court's original judgment"). Finally, at the time of Mogilyansky's plea hearing, the Third Circuit had not addressed the effect of a waiver provision on a § 3583(e) motion grounded in post-sentence developments. Even if *Damon* controlled, the case was decided ten years after Mogilyansky pled guilty. Therefore, Mogilyansky would not have reasonably understood that the waiver encompassed a motion for early termination of supervised release. *See, e.g.*, *Thompson*, No. 09-797, ECF No. 46 at 4–5.

Mogilyansky has not waived his right to move for early termination of supervised release, so the Court now turns to the merits.

### III.        Early Termination Is Warranted.

18 U.S.C. § 3583(e)(1) grants the Court broad discretion to terminate supervised release after considering the sentencing factors set forth in 18 U.S.C. § 3553(a) if it is warranted by the defendant's conduct and in the interest of justice. *United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020). It is the defendant's burden, "as the party receiving the benefit of early termination, to

demonstrate that such a course of action is justified." *United States v. Weber*, 451 F.3d 552, 559 n.9 (9th Cir. 2006); *see also United States v. McDowell*, 888 F.2d 285, 291 (3d Cir. 1989) ("[T]he burden of ultimate persuasion should rest upon the party attempting to adjust the sentence."). The Court need not find "exceptional, extraordinary, new, or unforeseen circumstances" to grant early termination. *Melvin*, 978 F.3d at 53. The § 3553(a) factors relevant to a motion for early termination are:

> (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established for the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

*Id.* at 52 (citation omitted); *see also* 18 U.S.C. § 3553(a)(1), (2)(B)–(D), (4)–(7). The Court is "not required to make specific findings of fact with respect to each of these factors; rather, a statement that the district court has considered the statutory factors is sufficient." *Melvin*, 978 F.3d at 52–53 (cleaned up); *see also United States v. Sheppard*, 17 F.4th 449, 456 (3d Cir. 2021). In deciding whether to terminate supervision early, the Sentencing Commission recommends that courts consider such factors as:

> (i) Any history of court-reported violations over the term of supervision;
>
> (ii) The ability of the defendant to lawfully self-manage;
>
> (iii) The defendant's substantial compliance with all conditions of supervision;
>
> (iv) The defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision;
>
> (v) A demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and

(vi) Whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant.

U.S. Sent'g Guidelines Manual ("USSG") § 5D1.4, cmt. n.1(B) (U.S. Sent'g Comm'n 2025).

The Court has considered the statutory factors, and although it need not detail its specific factual findings with respect to each factor, it discusses the evidence and arguments bearing most heavily on its decision below.

### A.    The Nature and Circumstances of the Offense and the Defendant's History and Characteristics

The government's argument focuses largely on the nature and circumstances of the offense. Similarly, the Probation Officer indicated that Probation's position that it opposes early termination rested on the fact that the underlying offense was a sex offense. ECF No. 83 at 45:2–5. The Court agrees Mogilyansky's offenses were egregious. He traveled to Russia to engage in sexual conduct with three minor girls whom he retrieved from an orphanage. He participated in a business plan to market those girls and others as prostitutes online, using his apartment as a meeting place for the girls and women to meet with "clients" of the business. The Court does not minimize or overlook any of that conduct. However, the nature and circumstances of the offense is but one of a number of factors the Court must consider.[9] The Court, therefore, turns to the defendant's history and characteristics.

---

[9] The government argues that because Mogilyansky "engaged in wanton criminal conduct involving the hands-on sexual exploitation of children[,] . . . supervision by the Probation Office for the full fifteen-year period to assure rehabilitation and compliance with the law seems the absolute minimum the law should require." ECF No. 76 at 21–22. At the hearing, the government reiterated this position, stating Mogilyansky's supervision should continue "until the very last minute." ECF No. 85 at 24:15–17. However, the law does not create a different standard for sex offenders moving for early termination of supervised release. The only minimum it requires is that sex offenders must serve no less than 5 years of supervised release. 18 U.S.C. § 3583(k). The law also does not require the Court to give more weight to any one factor than the others; the balancing of the sentencing factors is within the Court's discretion. *See United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009); *United States v. Hernandez*, 633 F.3d 370, 375 (5th Cir. 2011) ("[A]lthough courts must *consider* all the § 3553(a) factors, it is not possible, let alone required that they give incommensurable factors . . . equal weight. Rather, they must use their judgment to weigh the relative importance of

Mogilyansky had no infractions while incarcerated and has not once violated the conditions of his supervision. USSG § 5D1.4, cmt. n.1(B)(i), (iii). Since his release, Probation has determined that his risk has decreased since supervision began and accordingly his supervision level is low-moderate one. ECF No. 83 at 42:12–25, 44:15–23; USSG § 5D1.4, cmt. n.1(B)(v). He has started a successful business and formed positive personal and professional relationships. USSG § 5D1.4, cmt. n.1(B)(iv). He has not only reintegrated into his community but has expanded it and given back to it through his work supporting various clients in their times of need. *See, e.g.*, Lyubarsky Letter, ECF No. 67-12; Jane Doe Letter, ECF No. 67-13; Gelbart Letter, ECF No. 67-15. The Court is also struck by his openness with his business contacts and community regarding his conviction. Multiple individuals expressed that Mogilyansky shared his conviction with them from the outset of their relationships, and the head of his children's middle school reported that his conviction was shared with all families, that he was permitted to participate in school related events with certain restrictions, and that there were no incidents or complaints from any school community members. ECF No. 86 at 6. Friends of his children were allowed to attend events at Mogilyansky's home, Mogilyansky was invited into their homes for events, and the only commentary relayed to the head of school was "fond and positive." *Id.*

Mogilyansky also assisted his children in participating in a wide range of activities, giving advice and guidance as they started student organizations and made major decisions. Although he did not personally discuss the details of his criminal conduct with his children, which the government found concerning, the Court finds he was forthcoming with the adults in his life and with the parents of his children's friends and Jane Doe. That Mogilyansky consistently and

---

each factor in relation to each particular defendant, with some factors being more important in some cases and others more important in others.").

constantly took accountability for his criminal conduct with his community is indicative of maturity and dedication to reintegration and rehabilitation that the Court finds meaningful.

### B.      Protection of the Public and Needed Correctional Treatment

Given the serious nature of the offense conduct, consideration of the need to protect the public from future crimes of the defendant and to provide needed treatment are of considerable importance. The Sentencing Commission directs courts to consider public safety as evidenced not only by the nature of the offense, but also "the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant." USSG § 5D1.4, cmt. n.1(B)(vi). Relatedly, courts may also wish to consider the defendant's ability to lawfully self-manage and problem solve. USSG § 5D1.4, cmt. n.1(B)(ii).

In support of this prong, Mogilyansky submitted: Exhibit A, Dr. Seraydarian's counseling and treatment summary from 2017 through 2026, ECF No. 67-1; Exhibit B, Dr. Samuel's report, ECF No. 67-2; Exhibit C, 2016 JJPI Discharge Summary by Dr. Skoraszewski, ECF No. 67-3; Exhibit D, 2016 JJPI Post-Discharge General Safety Plan by Dr. Skoraszewski, ECF No. 67-4; Exhibit E, 2017 Polygraph and Voice Stress Analysis Test Report, ECF No. 67-5; and Exhibit T, 2026 Evaluation Report by Dr. Samuel, ECF No. 77-2.

In 2016, Probation referred Mogilyansky to JJPI to determine his appropriateness for sex offense specific treatment. ECF No. 67-3 at 2. Dr. Skoraszewski met with Mogilyansky over the course of six months and ultimately prepared a Discharge Summary. *Id.* at 3. Mogilyansky had a very high attendance rate and no unexcused absences. *Id.* After six months, "[h]e was cleared for successful discharge by the Treatment Review Board" because he had achieved his treatment goals. *Id.* Dr. Skoraszewski also noted that Mogilyansky "took full responsibility for his offense behavior,

18

developed relapse prevention skills, and demonstrated genuine remorse and victim empathy." *Id.* at 4. As part of the discharge process, Mogilyansky successfully completed a polygraph examination which detected no deception in his answers. ECF No. 67-4 at 1; ECF No. 67-5. Dr. Skoraszewski concluded that Mogilyansky's risk of "ever committing another sexual offense is relatively low." ECF No. 67-4 at 1.

Dr. Seraydarian began providing mental health treatment to Mogilyansky weekly in August 2017 and biweekly beginning in November 2019. ECF No. 67-1. In October and November 2024, Mogilyansky was administered the Millon Multiphasic Personality Inventory-2, the Personality Assessment Inventory, and the Abel Assessment of Sexual Interest-3. *Id.* at 2. Based on those results and Mogilyansky's progress in mental health treatment, Dr. Seraydarian concluded Mogilyansky was at low risk for recidivism. *Id.*; *see also id.* at 15–17 (describing test results which showed no signs of sexual deviancy and concluding Mogilyansky was at low risk for recidivism). Dr. Seraydarian noted Mogilyansky's progression from being unable to address his vulnerabilities and cope with stressors, to his ability now to admit and process his vulnerabilities and insecurities. *Id.* at 3–4. Dr. Seraydarian reinforced the findings of the JJPI evaluator that Mogilyansky's crimes were not caused by a deviant sexual arousal pattern and that he does not need sex offender specific treatment. *Id.* at 4. Dr. Seraydarian further concluded that Mogilyansky "has exhibited prosocial and mature decision making," is conscious of the consequences of his actions and their effects on others, and that his "risk for recidivism is infinitesimal." *Id.* at 5.

The government criticizes Dr. Seraydarian's report because it "is not a forensic mental health assessment." Dr. Heilbrun Report, Gov't Ex. B, ECF No. 76-2. The government also argues the summary is not impartial and lacks a review of records, collateral interviews, and psychological testing. *Id.*; *see also* ECF No. 76 at 17. The Court acknowledges the different purposes of forensic

19

mental health assessments and therapy as explained by Dr. Heilbrun and takes that into consideration when determining how much weight to give Dr. Seraydarian's report. ECF No. 76-2 at 3. However, that Dr. Seraydarian was a treating therapist, not an impartial evaluator, does not make his insight irrelevant. To the contrary, Mogilyansky's voluntary participation in bi-weekly therapy sessions, with positive feedback from his doctor, demonstrates his efforts to reintegrate into his community and avoid recidivism. *See* USSG § 5D1.4, cmt. n.1(B)(vi).

Finally, Mogilyansky presents two forensic evaluations from 2009 and 2026, respectively. Dr. Samuel conducted a forensic evaluation of Mogilyansky prior to his sentencing in 2009. At the time of this first evaluation, Dr. Samuel was an associate clinical professor in the department of psychiatry at Thomas Jefferson University Hospital. ECF No. 46 at 4:1–5; *see also* ECF No. 67-2 at 1. He met with Mogilyansky over ten times in 2009, interviewed his wife and father, and administered psychological testing. ECF No. 46 at 7. He also reviewed the indictment and a draft PSR. ECF No. 77-2 at 4.

In response to the government's criticism of the 2009 evaluation as being too temporally attenuated to support any finding with respect to Mogilyansky's current risk levels, ECF No. 76 at 18, Dr. Samuel prepared a second forensic evaluation in May 2026. ECF No. 77-2. Dr. Samuel now has a private practice in St. Louis, Missouri, and Philadelphia, Pennsylvania, where he treats adolescents and adults. ECF No. 67-2 at 1. This evaluation involved eight telephone and virtual meetings with Mogilyansky, review of the defense evidence submitted in connection with the Motion, review of previous tests, and administration of additional tests. ECF No. 77-2 at 7. In both evaluations, Dr. Samuel concluded Mogilyansky is not diagnosed with any psychosexual disorders or any other psychological disorders and that his risk of recidivism is low. *Id.* at 9.

Taken together, all the evidence presented on paper and in testimony indicates that continued supervision is not needed for protection of the public or to ensure Mogilyansky will receive necessary treatment. Although the government raises doubts about how Mogilyansky will control "urges," there is no evidence that he has any such "urges" to control, and all scientific evidence shows the opposite. The Court saw no evidence that Mogilyansky was dishonest in his mental health evaluations, and the multiple doctors who evaluated him found him to be forthcoming and honest. The government's doubts are merely conjecture.

The Court addresses several of the government's additional concerns. First, the government raised concerns about Mogilyansky's computers being supervised by his employer. At the hearing, the government argued that the informal change to who would monitor Mogilyansky's work devices shows that "if the defendant can take advantage, he will." ECF No. 83 at 51:10–20. The Court is not persuaded by this argument because Probation approved the change without Court approval. Mogilyansky did not violate the conditions of his supervision by doing exactly what Probation told him he could do. The Court will not penalize Mogilyansky for Probation's unilateral decisions.

Second, the government attempted to raise concerns as to Mogilyansky's travel requests to Probation. However, as the Probation Officer testified, Mogilyansky never violated his conditions of supervision by traveling without Probation's permission. That he sought and received permission to travel for work and personal reasons does not weigh on whether he is entitled to early termination. Indeed, it weighs in his favor that Probation found it appropriate to permit him to travel and that he did travel often without any violations.[10]

---

[10] The Probation Officer also testified about a home visit he conducted two days before the hearing, during which he observed "numerous cameras outside and inside the home, more than [he's] seen previously with other cases," two laptops that Mogilyansky stated were his, and "two towers that looked like maybe they were utilized for power, or storage, something that maybe would be utilized . . . as an industrial power supply." ECF No. 83 at 20:8–21:10.

Third, the government raised concerns about Mogilyansky providing aid in the form of legal services to a minor girl whose family reached out to him for help with a lawsuit. This interaction was also approved by Probation, and there is no evidence of any impropriety. The government's speculation and conjecture are not evidence and are squarely rejected by this Court.

## IV.    Conclusion

It is true that compliance with supervised release is merely what is expected and does not necessarily warrant early termination. *See United States v. Guilliatt,* No. 01-408, 2005 WL 589354, at *1 (E.D. Pa. Jan. 18, 2005). However, Mogilyansky has done more. He has demonstrated reintegration into the community and a dedication to rehabilitation through his efforts in building his business, strengthening his personal and professional relationships, and voluntary commitment to therapy. The government and Probation would have the Court overlook all of Mogilyansky's achievements in favor of him serving his term of supervision "until the very last minute" based only on the nature of his offense. The Court cannot, in consideration of all of the § 3553(a) factors, do so. Nor can it ignore Mogilyansky's conduct and the strides he has made since his release over a decade ago.

The purpose of supervision is not to punish the defendant further but to help him transition back into the community or to provide rehabilitation after release. *Murray*, 692 F.3d at 280. Applying those principles, courts strive to "assure that [those] who will need post-release supervision will receive it" while "prevent[ing] probation system resources from being wasted on

---

Mogilyansky explained the towers powered the computers in the house. *Id.* at 21:11–123. The Probation Officer also indicated he asked to search Mogilyansky's cell phone, that Mogilyansky allowed it but asked to show him an email, that the Probation Officer took the phone back, began a search, but did not finish it because there were too many applications. *Id.* at 22:1–16. At no time did the Probation Officer confiscate Mogilyansky's phone in order to complete the search, nor did he opt to extend the visit. Both of which were within his authority. The Probation Officer's attempts to create a cloud of suspicion through his descriptions of the home visit were ineffective. The Court will not infer a violation where Probation did not find one.

supervisory services for releasees who do not need them." USSG § 5D Introductory Commentary (quoting Senate Report No. 225, 98th Congress., 1st Session 54, 124 (1983)). Mogilyansky has completed evaluations and treatment, he has reintegrated, and in doing so, he has taken accountability for his offenses and demonstrated rehabilitation.

Nonetheless, Mogilyansky committed the underlying offense while traveling overseas. He asks the Court to terminate his supervision primarily because of the inconvenience of the travel restrictions. Accordingly, the Court will not terminate supervised release immediately. For one year, Mogilyansky must inform the Probation Office before traveling domestically; however, provided he remains compliant with the terms of his supervised release, the Probation Office's approval will not be required for Mogilyansky to travel domestically. For international travel, Mogilyansky may contact the Court through his counsel for approval. After one year, if Mogilyansky remains free of violations of the conditions of his supervision, supervised release shall terminate.